## Frasure v. Commonwealth.

(Decided Sept. 26, 1933.)

W. A. DAUGHERTY for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Under an indictment charging her with the murder of her husband, George Frasure, Alice Frasure has been convicted of manslaughter and her punishment fixed at imprisonment for two years. By this appeal

she is seeking a reversal of the lower court's judgment. The sole ground urged as warranting such action is that the verdict of the jury is flagrantly against the evidence. This is the second appeal of this case; a former judgment of conviction having been reversed because of the admission of incompetent evidence. 245 Ky. 127, 53 S. W. (2d) 204, 205. In that opinion, the court, in disposing of appellant's contention that she was entitled to a directed acquittal, said:

"* * * As there was some evidence her husband had given her his pistol before she shot him, the case was properly submitted to the jury."

It appears in evidence that these parties were married in 1917, and for ten or eleven years their relations were cordial; however, in the latter years of his life, the husband was given to the excessive use of liquor, and for some reason became very suspicious and jealous of his wife. Witnesses for both the commonwealth and appellant testified that he often abused and beat her, and that she would seek refuge at the homes of the neighbors and friends. A number testified to her having wounds and bruises on her person. When in moods of anger and jealousy, deceased usually referred to his wife as his yellow-headed bitch. On the other hand, there is evidence that they were constantly fighting, that she had inflicted bruises and wounds on her husband, and that she was heard to call him a red-eyed son of a bitch.

Some weeks before the homicide, appellant left her husband and children and went to the home of her sister, Mrs. Turner. Early on the morning of September 19, 1931, deceased went to Mrs. Turner's home with some material, and requested his wife to make some clothing for the children. This she agreed to do. Later in the day Frasure returned, carrying a pistol in his hand, and apparently in a very angry mood. Mrs. Turner testified that, when she saw him at the gate, she asked him not to come in, but, ignoring her request, he said, in effect, that he had no respect for that or for the law. He told his wife he had come for her, and that she had to go home, and jabbed and struck her with his pistol, and snapped it at her. Appellant testified that he fired four or five times out into the yard, then reloaded his pistol, and, in attempting to fire again, it became jammed or locked in some way; that

deceased got down and was striking the pistol on the porch floor in an attempt to adjust it, stating that when he did so he was going to kill her; that she ran into the house, procured a pistol belonging to her brother-in-law, and, when she returned to the porch, deceased arose, started to turn toward her, and she shot him. The bullet which was removed after his death from the right armpit entered the left side of the back under the shoulder blade.

A number of witnesses testified to having heard shots, but none of them saw appellant fire the shot that killed her husband. Mrs. Turner left her home during the difficulty and went to the home of a neighbor to telephone for the sheriff. She and others testified that immediately after the last shot was fired they heard appellant scream, and they ran to the scene at once; that they found deceased lying by the side of the plank walk. His pistol was found on the other side of the walk, and some testified that it was six or eight feet from his body. One witness testified to a statement of appellant to the effect that she told her husband she would accompany him home if he would surrender his pistol to her; that he gave it to her, sat down on the porch, and while he sat there she shot him with his own pistol. Some of the proven facts and circumstances are not inconsistent with the theory that the killing occurred in this way.

Mrs. Turner testified that, after the shooting, she found her husband's pistol on a table in the house, and placed it under a pillow, where it was later discovered by some of the neighbors; that she examined it, and that it contained two empty shells.

From the foregoing recital of the substance of the evidence, it will be seen that there is much to support appellant's plea of self-defense; however, there is evidence of a probative value pointing the other way. Evidence of constant cruelties, indignities, and abuse to which appellant was subjected for months before this tragedy would naturally arouse sympathy in her behalf. No doubt this evidence operated in mitigation of her punishment, but, notwithstanding its appeal to the sympathy of the jurors, two juries of appellant's own county, upon a consideration of it in connection with all the other evidence, returned verdicts of guilty. Doubtless some, if not all, the members of the jury

knew appellant, and the witnesses introduced for and against her, and having heard the evidence, and having had an opportunity to observe the demeanor of the witnesses while testifying, were thus enabled to better judge the credibility of the witnesses than is a court of review from a reading of the record.

This court is not authorized to invade the province of the jury in determining the credibility of the witnesses and the weight to be given their evidence merely because of a conflict in evidence, nor because it might have reached a different conclusion had it been left to determine the guilt or innocence of the accused. It is a rule of long standing that, where there is a conflict in evidence, this court will not reverse a judgment and set aside a verdict, unless it is manifest that it is so flagrantly against the evidence as to indicate passion or prejudice rather than due deliberation upon the part of the jury. Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190; McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630; Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629; Allison v. Commonwealth, 196 Ky. 140, 244 S. W. 422.

A careful consideration of the entire record leads to the conclusion that this court would not be authorized to disturb the verdict on the ground urged; therefore the judgment is affirmed.